# UNITED STATES DISTRICT COURT

## DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 2:11-cr-113-DBH |
| | ) | |
| SHAWN SAYER, | ) | |
| | ) | |
| Defendant | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 2:11-cr-47-DBH |
| | ) | |
| MICHAEL R. THOMAS, | ) | |
| | ) | |
| Defendant | ) | |

## DECISION AND ORDER ON DEFENDANT SAYER'S MOTION TO DISMISS COUNT ONE OF THE INDICTMENT AND DEFENDANT THOMAS'S MOTION TO DISMISS COUNT EIGHT OF THE SUPERSEDING INDICTMENT

These defendants have each moved to dismiss interstate stalking charges against them for constitutional and other reasons. Because their constitutional arguments raise the same issues in both cases, I held a consolidated oral argument on May 4, 2012.

Part of the interstate stalking statute provides:

> Whoever . . . with the intent . . . to kill, injure, harass, or place under surveillance with intent to kill, injure, harass, or intimidate, or cause substantial emotional distress to a person in another State or tribal jurisdiction or within the special maritime and territorial jurisdiction of the United States . . . uses the mail, any interactive computer service, or any facility of interstate or foreign commerce to engage in a course of conduct that causes substantial emotional distress to that person or places that person in reasonable fear of the death of, or serious bodily injury to [that person,

a member of the immediate family . . . or a spouse or
intimate partner of that person] . . . shall be punished . . . .

18 U.S.C. § 2261A(2).[1]  When the internet is involved, the cases refer to this as

a cyberstalking statute.  See, e.g., United States v. Walker, 665 F.3d 212 (1st

Cir. 2011).

Count One of the Indictment against the defendant Sayer charges:

From about July 2009, the exact date being unknown, until
about November 2009, in the District of Maine, and
elsewhere, Defendant, Shawn Sayer with the intent to
injure, harass, and cause substantial emotional distress to
a person in another state, namely, Louisiana, used facilities
of interstate or foreign commerce, including electronic mail
and internet websites, to engage in a course of conduct that
caused substantial emotional distress to the victim and
placed her in reasonable fear of death or serious bodily
injury.

Sayer Indictment (ECF No. 18).

Count Eight of the Superseding Indictment against the defendant

Thomas charges:

From about July 2006 to about March 2011, in the District
of Maine, the defendant, MICHAEL R. THOMAS f/k/a Sean
P. Higgins, Shawn P. Higgins knowingly, willfully and with
the intent to harass and cause substantial emotional
distress to a person in the state of Massachusetts, used the

---

[1] Congress broadened the statute significantly in 2006.  United States v. Cassidy provides a
useful summary of the changes:

These amendments significantly broadened the scope of the law.
The requisite intent no longer was limited to an intent to "kill or
injure," but was broadened to include the intent to  "harass or
place under surveillance with the intent to . . . harass or
intimidate or cause substantial emotional distress."  The requisite
action was also broadened so as to bring within the  scope of the
law a course of conduct that merely "causes substantial
emotional distress."  Prior to the 2006 change, the course of
conduct was limited to one that places a person in reasonable
fear of death or serious bodily injury.  Finally, the 2006 changes
expanded the mechanisms of injury to add use of an "interactive
computer service" to the existing list which already included use
of mail or any facility of interstate or foreign commerce.

814 F. Supp. 2d 574, 581 (D. Md. 2011).

> United States mail to engage in a course of conduct that caused substantial emotional distress to that person. Specifically, THOMAS sent letters containing threats and harassing information through the United States mail that were received at several addresses in Danvers and Peabody, Massachusetts. As a result of THOMAS's course of conduct, the person who was the target of the course of conduct experienced substantial emotional distress.

Thomas Superseding Indictment at 6 (ECF No. 52).

I now **DENY** both motions to dismiss.

### *Constitutional Issues in the Interstate Stalking Statute*

The defendants make three constitutional challenges to the interstate stalking charge: the statute is unconstitutional as applied to each of them; it is unconstitutionally overbroad; and it is unconstitutionally vague. Necessarily, I deal with their "as applied" arguments individually. But I deal with their unconstitutional overbreadth and unconstitutional vagueness arguments on a consolidated basis. Finally, there is also a separate issue concerning the sufficiency of the indictment for each defendant.

#### *As Applied: The Defendant Sayer*

It is difficult to make an "as applied" ruling at this early stage of the proceedings against Sayer because I do not know what the actual evidence at trial will establish that Sayer said or did vis-à-vis the victim. But to the extent that there is consensus as to what Sayer is accused of communicating or doing, the charge certainly survives a First Amendment as-applied attack. According to the government, after Sayer's former girlfriend changed her name and moved from Maine to Louisiana to escape him, the defendant Sayer, still in Maine,

> created fictitious internet advertisements and social media profiles using [the victim's] name and other identifying information. The fictitious internet postings included [the victim's] address and invited men to come to her home for sexual encounters. The Defendant also posted video clips to several adult pornography websites depicting sexual acts [the victim] had consensually performed with him during their relationship. The Defendant edited the clips so they also displayed [the victim's] name and actual address. As a result of the Defendant's actions, numerous men arrived at [the victim's] Louisiana residence seeking sexual encounters, terrifying her and causing her to fear that she would be raped or assaulted.

Gov't's Opp'n to Sayer Mot. to Dismiss Count One of the Indictment at 2 (ECF No. 84).[2]

None of this activity is speech protected by the First Amendment. Yes, emails and websites involve communication and in that sense are speech. But bribery, extortion, conspiracy, fraud, identity theft and threats[3] also all involve communication, and speech in that sense, and yet they are crimes not protected by the First Amendment. Instead, the Supreme Court has long

---

[2] According to the defendant Sayer:

> The discovery and search warrant affidavits give some indication of the conduct that the government believes [the defendant] engaged in that violated the statute. In sum, the government believes that [the defendant] posted pornographic videos of his ex-girlfriend on several internet websites and engaged in chats and e-mails with prospective sexual partners, while posing as his ex-girlfriend.

Sayer Mot. to Dismiss Count One of the Indictment at 6 (Docket Item 80). In addition, according to the defendant Sayer:

> It is anticipated that the government is prosecuting him because he posted videos of the victim on adult websites with her name and address on some of the videos, and that he posed as the victim and engaged in e-mail contact with prospective sexual partners. Apparently, the emotionally distressing aspect of the posting of the videos was the text that included the victim's name and address. The emotionally distressing aspect of the e-mail contact was that the participants are alleged to have appeared at the victim's home for sexual encounters.

Id. at 8.

[3] Also, incitement and solicitation to commit a crime. United States v. Williams, 553 U.S. 285, 298 (2008).

recognized that "speech or writing used as an integral part of conduct in violation of a valid criminal statute" is not protected. <u>Giboney v. Empire Storage & Ice Co.</u>, 336 U.S. 490, 498 (1949), *cited with approval in* <u>United States v. Stevens</u>, 130 S. Ct. 1577, 1584 (2010); <u>New York v. Ferber</u>, 458 U.S. 747, 761-62 (1982) (citing <u>Giboney</u> in support of constitutionality of making child pornography illegal); <u>Virginia v. Black</u>, 538 U.S. 343, 360, 363 (2003) (although cross burning is symbolic expression, "First Amendment permits Virginia to outlaw cross burnings done with the intent to intimidate"); <u>accord United States v. Gagliardi,</u> 506 F.3d 140, 147-48 (2d Cir. 2007) (First Amendment does not protect attempts to entice a minor to engage in prohibited sexual activity); <u>United States v. Rowlee</u>, 899 F.2d 1275, 1278 (2d Cir. 1990) (applying <u>Giboney</u> in deciding that conspiracy is not protected by the First Amendment); <u>United States v. Freeman</u>, 761 F.2d 549, 552 (9th Cir. 1985) (First Amendment does not protect counseling violation of tax laws); <u>United States v. Varani</u>, 435 F.2d 758, 762 (6th Cir. 1970) (First Amendment does not protect perjury, bribery, extortion and threats, or conspiracy because the speech is "the very vehicle of the crime itself"); <u>United States v. Kim</u>, 808 F. Supp. 2d 44, 56 (D.D.C. 2011) (First Amendment does not protect oral disclosures of national security information); <u>United States. v. Scruggs</u>, 2011 WL 6812626, at *3-4 (N.D. Miss. 2011) (First Amendment does not protect aiding and abetting honest services mail fraud); <u>United States v. Coronado</u>, 461 F. Supp. 2d 1209, 1213 (S.D. Cal. 2006) (First Amendment does not protect teaching how to make and use a destructive device with the intent that it be used in furtherance of criminal activity).

Thus, this case is unlike <u>United States v. Cassidy</u>, 814 F. Supp. 2d 574 (D. Md. 2011), where the court found this statute unconstitutional as applied. In <u>Cassidy</u>, the victim was "not merely a private individual but rather an easily identifiable public figure that leads a religious sect, and . . . many of the Defendant's statements relate to [the sect's] beliefs and [the victim]'s qualifications as a leader." <u>Id</u>. at 586. The <u>Cassidy</u> court said that it was

> clear that the Government's Indictment is directed at protected speech that is not exempted from protection by any of the recognized areas just described [which included the <u>Giboney</u> principle]. First, A.Z. is a well-known religious figure . . . . [A] *Washington Post* journalist wrote a critical non-fiction book about [her]. Second, although in bad taste, Mr. Cassidy's Tweets and Blog posts about A.Z. challenge her character and qualifications as a religious leader. And, while Mr. Cassidy's speech may have inflicted substantial emotional distress, the Government's Indictment here is directed squarely at protected speech: anonymous, uncomfortable Internet speech addressing religious matters. Tellingly, the Government's Indictment is not limited to categories of speech that fall outside of First Amendment protection—obscenity, fraud, defamation, true threats, incitement or speech integral to criminal conduct. Because this speech does not fall into any of the recognized exceptions, the speech remains protected.

<u>Id</u>. at 583. The facts of <u>Cassidy</u> are completely different from those here, and <u>Cassidy</u> does not support the proposition that the statute as applied here is unconstitutional. Sayer has pointed to nothing that he said in his course of conduct that amounts to <u>Cassidy</u>-type speech. What Sayer is alleged to have done involves no political or religious speech or the promotion of ideas of any sort. Instead, everything that Sayer allegedly said was "integral to criminal conduct," his criminal conduct seeking to injure, harass or cause substantial emotional distress to the victim. I conclude that the statute is not unconstitutional as applied in Sayer's case.

***As Applied: The Defendant Thomas***

In response to the defendant Thomas's motion for a bill of particulars, the government specified the twelve letters that are the basis of Count Eight, and the defendant Thomas has attached them (with certain identifying information deleted) to his motion to dismiss. The letters are a series that Thomas allegedly sent to or about his former neighbor who moved from Maine to Massachusetts. Allegedly Thomas addressed seven to the victim and five to others, including the Danvers Massachusetts Police Department. Thomas Mot. to Dismiss Count Eight at 13-14 (ECF No. 85).[4] Among other things, they accused the victim of being a "serial rapist, child molester and murderer" and warned the recipient to "protect your children from this monster." Letters at 6 (ECF No. 85-2). Another letter said that "he makes child pornography. He has sex with kids. . . . He rapes little girls and boys. He rapes women in snuff films. He kills people for fun." Id. at 7. One addressed to the victim said "You will pray for death before I'm done." Id. at 9. Still others enclosed photographs of holocaust concentration camp victims.[5] Letters at 5 and 7 (ECF No. 85-3). Still another said "Die Bastard. . . . This is your final warning." Id. at 9. Another: "Gonna kill your sister." Id. at 11.

---

[4] The government says that some were sent to neighbors of the victim in Massachusetts. Gov't's Opp'n to Thomas Mot. to Dismiss at 8 (ECF No. 89). The government says that one was sent to a business in Danvers, contained a folded white piece of paper with the victim's name on it, and enclosed a white powder. After law enforcement was called, it was determined that the powder was baby powder. Id. at 3. A letter containing white powder was also sent to the victim. Id.

[5] The government states that the victim is Jewish and that the defendant mailed these to him at home and at work. Gov't's Opp'n to Thomas Mot. to Dismiss at 3.

There can be no question that this tirade is unprotected conduct/speech. It is not only "speech or writing used as an integral part of conduct in violation of a valid criminal statute," Stevens, 130 S. Ct. at 1586, one of the exceptions to First Amendment protection, but also is clearly defamatory, still another exception to First Amendment protection. Id. at 1584 (citing Beauharnais v. Illinois, 343 U.S. 250, 254-55 (1952)[6]). Moreover, some of it fits the "true threat" exception that the courts have carved out of First Amendment protection.[7] Virginia v. Black, 538 U.S. at 359-60; United States v. Stefanik, 674 F.3d 71 (1st Cir. 2012); United States v. Walker, 665 F.3d 212 (1st Cir. 2011); United States v. Nishnianidze, 342 F.3d 6 (1st Cir. 2003).

I conclude that the statute is not unconstitutional as applied in Thomas's case.[8]

---

[6] "No one will gainsay that it is libelous falsely to charge another with being a rapist, robber, carrier of knives and guns, and user of marijuana." Beauharnais, 343 U.S. at 257-58.

[7] That addressees may have declined to open some of the letters does not prevent the prosecution. It may be relevant to the jury in determining the effect of the letters on the victim.

[8] If these two defendants' course of conduct (including their communications) were not within the Giboney exception to First Amendment protection, then I would follow United States v. O'Brien, 391 U.S. 367 (1968). There the Supreme Court stated: "We cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." Id. at 376. If the defendants' conduct here was intended to communicate an idea (and there is no suggestion what that "idea" would be), then O'Brien goes on to say:

> even on the assumption that the alleged communicative element in O'Brien's conduct is sufficient to bring into play the First Amendment, it does not necessarily follow that the destruction of a registration certificate is constitutionally protected activity. This Court has held that when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms. . . . Whatever imprecision inheres in these terms [that the Court has used in previous cases], we think it clear that a government regulation is sufficiently justified if it is within the constitutional power of the Government, if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free

*(continued next page)*

### *First Amendment Overbreadth*

In addition, the defendants argue that, regardless of their own conduct, this statute *could* be applied improperly to First Amendment activity. Therefore, they say, they should be permitted to make the argument that its reach is too broad, and thereby prevent their prosecution and conviction for their own *un*protected speech or conduct. They rely upon Supreme Court cases that sometimes have permitted such an "overbreadth" challenge on the basis that, otherwise, a statute might deter legitimate and constitutionally protected speech on the part of those unwilling to risk prosecution and raise the challenge themselves. The burden of demonstrating such overbreadth rests with the defendants, Virginia v. Hicks, 539 U.S. 113, 122 (2003), and the Supreme Court has urged caution in using the overbreadth doctrine:

> there comes a point at which the chilling effect of an overbroad law, significant though it may be, cannot justify prohibiting all enforcement of that law—particularly a law that reflects "legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct." For there are substantial social costs created by the overbreadth doctrine when it blocks application of a law to constitutionally unprotected speech, or especially to constitutionally unprotected conduct. To ensure that these costs do not swallow the social benefits of declaring a law "overbroad," we have insisted that a law's application to protected speech be "substantial," not only in an absolute sense, but also relative to the scope of the law's plainly legitimate applications, before applying the "strong medicine" of overbreadth invalidation.

---

> expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

Id. at 376-77. Here there is a sufficiently important governmental interest, within Congress's constitutional power, in regulating the nonspeech element of interstate stalking that is unrelated to the suppression of free expression, and the alleged restriction on alleged First Amendment freedoms is no greater than essential to the furtherance of that governmental interest.

<u>Id</u>. at 119-20.

Recently, the Supreme Court has stated that "[t]he first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." <u>United States v. Williams</u>, 553 U.S. 285, 293 (2008). Next a court should "turn to whether the statute, as we have construed it, criminalizes a substantial amount of protected expressive activity." <u>Id</u>. at 297. I follow that sequence here.

### *What the interstate stalking statute covers*

The statute requires proof of the following elements:

1. Use of
   a. the mail,
   b. any interactive computer service, or
   c. any facility of interstate or foreign commerce;
2. To engage in a course of conduct, defined as a pattern of conduct composed of 2 or more acts, evidencing a continuity of purpose[9];
3. That causes
   a. substantial emotional distress, or
   b. reasonable fear of death or serious bodily injury,
   to a person[10] in another state or tribal jurisdiction or within the special maritime and territorial jurisdiction; and
4. Intent by the defendant to
   a. kill,
   b. injure,
   c. harass,
   d. place under surveillance with intent to kill, injure, harass, or intimidate, or
   e. cause substantial emotional distress to that person.

18 U.S.C. § 2261A(2).

---

[9] 18 U.S.C. § 2266 (definition).
[10] In some circumstances it can include family members or intimate partners of the victim.

***Whether the statute criminalizes a substantial amount of protected communicative activity***

According to the Supreme Court in <u>Stevens</u>, the test is whether "a substantial number of [the statute's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." <u>Stevens</u>, 130 S. Ct. at 1587 (quoting <u>Washington State Grange v. Washington State Republican Party</u>, 552 U.S. 442, 449, n.6 (2008) (internal quotation marks omitted)). Applying that test, I conclude that this statute covers much constitutionally *un*protected conduct (*e.g.*, a course of conduct mailing or transporting by bus or train anthrax or other dangerous substances to harm or distress a victim in another State); and much *un*protected "speech" (*e.g.*, direct threats to kill or injure as part of a course of conduct of physical stalking by bus or train; email threats to kill or injure; harassing phone calls[11]; and conduct and speech such as that of which these two defendants are accused). If a defendant's intent is to kill or injure, there is no First Amendment concern; and previous cases have rejected the defendants' contention that there is any substantial concern where the intent is to harass or intimidate. <u>See, e.g.</u>, <u>Bowker</u>, 372 F.3d at 378-79 ("We fail to see how a law that prohibits interstate travel with the intent to kill, injure, harass or intimidate has a substantial sweep of constitutionally protected conduct. The same is true with respect to the prohibition of

---

[11] The constitutionality of criminalizing telephone harassment has been repeatedly affirmed. <u>See e.g.</u>, <u>United States v. Eckhardt</u>, 466 F.3d 938, 944 (11th Cir. 2006); <u>United States v. Bowker</u>, 372 F.3d 365 (6th Cir. 2004), <u>vacated on other grounds</u>, 543 U.S. 1182 (2005); <u>Thorne v. Bailey</u>, 846 F.2d 241, 244-45 (4th Cir. 1988) (West Virginia statute "practically identical" to the federal statute); <u>United States v. Lampley</u>, 573 F.2d 783 (3d Cir. 1978). <u>But see</u> <u>United States v. Popa</u>, 187 F.3d 672 (D.C. Cir. 1999)(unconstitutional as applied to anonymous racial phone calls to United States Attorney's office, critical of prosecutorial conduct).

intentionally using the internet in a course of conduct that places a person in reasonable fear of death or seriously bodily injury. It is difficult to imagine what constitutionally-protected political or religious speech would fall under these statutory prohibitions.") (citations omitted)[12]; <u>see also</u> cases cited in note 11.

The overbreadth, if there is any, is in criminalizing conduct where the only requisite intent on the defendant's part is to cause substantial emotional distress to someone. It is the following portion of the statute that gives pause: "Whoever—. . . (2) with the intent—to . . . cause substantial emotional distress to a person in another State . . . uses the mail, any interactive computer service, or any facility of interstate or foreign commerce to engage in a course of conduct that causes substantial emotional distress to that person . . . shall be punished . . . ." 18 U.S.C. § 2261A(2). The defendants argue that this provision is a novel and substantial incursion into First Amendment-protected speech—that people could be prosecuted under this provision for blog postings critical of a politician or for criticizing a high profile athlete over the internet (because the speakers might have intended to cause substantial emotional distress to the respective politician or athlete), Sayer Mot. to Dismiss Count One of the Indictment at 3-4; that a jilted spouse could be prosecuted under this provision for sending letters to a church community detailing the affairs of the unfaithful other spouse; or that an angry rape victim could be prosecuted for sending letters to selected members of the rapist's community detailing the

---

[12] <u>Bowker</u>, 372 F.3d 365, was dealing with the statutory language before the substantial emotional distress element was added in 2006. <u>See</u> note 1 <u>supra</u>.

rapist's reprehensible conduct (again because the letter-writers might have intended to cause substantial emotional distress to the other spouse or the rapist respectively), Thomas Mot. to Dismiss at 10. The defendants have one concrete example of the provision's excessive reach, namely, Cassidy, 814 F. Supp. 2d 574. There the court found that the statute was unconstitutionally applied in a criminal prosecution against a defendant for speech that he directed at a particular religious leader.

I agree that there is reason for a modicum of concern with the potential scope of this particular provision, not because of the defendant Thomas's hypothetical prosecutions of the angry rape victim or the jilted spouse (which I consider unlikely, although such situations can be imagined if the statute were to be "interpreted to its semantic limits"[13]), but because of its potential reach into the communication of ideas, as in Cassidy. In Hustler Magazine, Inc. v. Flynt, 485 U.S. 46, 53-54 (1988), the Supreme Court pointed to the long tradition of using political caricatures and cartoons to cause severe emotional distress, a use nevertheless protected by the First Amendment. The Court held, therefore, that in the context of public debate about public figures there can be no tort recovery for intentional infliction of severe emotional distress unless the victim can prove that the defendant made false statements of fact with actual malice. Nevertheless, Hustler Magazine actually furnishes a limiting construction, and thereby diminishes the overbreadth concern for this statue's use in the area of public debate about public affairs such as politics

---

[13] See Bowker, 372 F.3d at 379-80 (refusing to invalidate the telephone harassment statute merely because there might be some possibility of unconstitutional applications).

and athletics. The <u>Hustler Magazine</u> holding would foreclose prosecutorial use of this portion of the interstate stalking statute to prosecute, say, those who, with intent to cause substantial emotional distress, made marital infidelity attacks on Herman Cain or John Edwards during their respective Presidential campaigns. Prosecutors would have to prove false statements of fact with actual malice in order to convict.

I conclude that the potential overbreadth of the provision is in fact modest, not substantial. The statute's specific intent requirement—that an offender have "the intent . . . to cause substantial emotional distress to a person in another State . . ."—will dispose of most concerns. Seldom will speech about athletes or politicians be accompanied by the direct intent of substantial emotional distress; substantial emotional distress may be a *byproduct* of such speech, but generally not the *purpose*.[14] If it is the purpose, <u>Hustler Magazine</u> provides a constitutional limitation in applying it. In addition, the statute makes it a condition of criminality that the course of conduct actually *cause* substantial emotional distress or reasonable fear of death or serious bodily injury ("a course of conduct that causes substantial emotional distress to that person or places that person in reasonable fear of the

---

[14] The provision as written arguably might cover a course of conduct of emailed communications where a defendant has a legitimate intent (for example to gain a commercial or litigating advantage) but also intends to cause substantial emotional distress as a tactic in doing so (for example, creating fear of dire economic consequences if a deal is not struck). The telephone harassment statute says that when telephone harassment depends upon conversation, unless the calls are anonymous the intent must be "*solely* to harass." 47 U.S.C. § 223(a)(1)(C),(E) (emphasis added). The Third Circuit has said that this "narrow intent requirement precludes the proscription of mere communication" and thus avoids constitutional issues. <u>United States v. Lampley</u>, 573 F.2d 783, 787 (3d Cir. 1978). There is no equivalent limitation in this interstate stalking statute, but a court might impose such a limiting construction if such a case were brought.

death of, or serious bodily injury to [family members]").  18 U.S.C. § 2261A(2).

This requirement also reduces the likelihood of unconstitutional application.

Where rough-and-tumble speech is the norm, as in athletics and politics, it is

unlikely to produce this actual causation.  The limiting requirement of "a

pattern of conduct composed of 2 or more acts, evidencing a continuity of

purpose," 18 U.S.C. § 2266(2), also limits the likely overbreadth.  Finally, at the

same time that Hustler Magazine imposed its First Amendment limits on the

tort of intentional infliction of emotional distress in public debate about public

affairs, it recognized that "[g]enerally speaking the law does not regard the

intent to inflict emotional distress as one which should receive much

solicitude." Hustler Magazine, 485 U.S at 52.  Other than Hustler Magazine's

protection of speech in public debate about public affairs, the parties have not

shown me cases where the tort of intentional infliction of emotional distress

has undercut the First Amendment.  Thus, I conclude that the defendants are

unable to establish that "a substantial number of [the statute's] applications

are unconstitutional, judged in relation to the statute's plainly legitimate

sweep." Stevens, 130 S. Ct. at 1587 (quoting Washington State Grange v.

Washington State Republican Party, 552 U.S. at 449, n.6 (internal quotation

marks omitted)).[15]

Moreover, I observe that the Supreme Court has warned that "the

overbreadth doctrine's concern with 'chilling' protected speech 'attenuates as

---

[15] Similarly, in Bowker the Sixth Circuit recognized that the telephone harassment statute
could have unconstitutional application "if interpreted to its semantic limits," and gave an
example, but concluded that "the fact that application of the telephone harassment statute
may be unconstitutional in certain instances does not warrant facial invalidation." Bowker,
372 F.3d at 379-80; accord Eckhardt, 466 F.3d at 943-44.

the otherwise unprotected behavior that it forbids the State to sanction moves from pure speech toward conduct.' *Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating).*" <u>Hicks</u>, 539 U.S. at 124 (emphasis added) (internal citation and quotations omitted). The <u>Hicks</u> principle applies here. This interstate stalking statute is directed at one who "uses the mail, any interactive computer service, or any facility of interstate or foreign commerce to *engage in a course of conduct that causes*" substantial emotional distress or fear of death or bodily injury (emphasis added). It is not "specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)." <u>Id</u>.[16] Instead, this is a statute that "reflects 'legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct,'" <u>id</u>. at 120 (quoting <u>Broadrick v. Oklahoma</u>, 413 U.S. 601, 615 (1973)), namely, the frightening and hateful crimes of interstate harassment and stalking now exacerbated by the ubiquitous presence of digital communication.[17] No one who reads the description of what these two defendants are alleged to have done could conclude that Congress may not

---

[16] For example, the statute does not deal with verbal or hand-delivered communications. Of course, when a defendant stalks or harasses someone in another state, interstate facilities will almost inevitably be involved to make possible the verbal communication or the delivery. But this statute also applies to conduct within the special maritime and territorial jurisdiction of the United States, and there verbal and hand-delivered written communications would not be covered.

[17] It will not do to say, as the defendants seem to, that victims can choose not to open mail or can ignore electronic communications such as email, Facebook postings, tweets, and text messages. The First Amendment does not give stalkers a license to place special conditions on how their victims use modern forms of communication as the price of avoiding hateful attention.

constitutionally make such conduct and communication criminal.  As has been said of the telephone harassment statute, "Congress had a compelling interest in the protection of innocent individuals from fear, abuse or annoyance at the hands of persons who employ the telephone, not to communicate, but for other unjustifiable motives."  United States v. Lampley, 573 F.2d 783, 787 (3d Cir. 1978).[18]  It will be sufficient to limit this statute's reach when it is applied, as in Cassidy, too broadly.[19]  That is not the case here.

Applying the presumption of constitutionality to a federal statute, United States v. Morrison, 529 U.S. 598, 607 (2000), I conclude that these two defendants—who allegedly engaged in conduct and utterances that were clearly unprotected—cannot avoid the respective charges against them by challenging the statute on its face as unconstitutionally overbroad.[20]

### Void for Vagueness

Next, the defendants argue that the language of the interstate stalking statute is unconstitutionally vague.  According to the Supreme Court:  "To satisfy due process, 'a penal statute [must] define the criminal offense (1) with sufficient definiteness that ordinary people can understand what conduct is prohibited and (2) in a manner that does not encourage arbitrary and discriminatory enforcement.'"  Skilling v. United States, 130 S. Ct. 2896, 2927-

---

[18] See also Eckhardt, 466 F.3d at 944; Bowker, 372 F.3d 365 (focus of the statute is abusive threatening or harassing conduct, intended to instill fear, not provoke a discussion about political issues; and not enough possible improper applications to justify overbreadth attack).

[19] That is what happened with the earlier telephone harassment statute.  Courts upheld it against overbreadth attacks, but on occasion found it unconstitutional as applied.  See e.g., Popa, 187 F.3d 672, note 11 supra.

[20] Cassidy, 814 F. Supp. 2d at 587, refused to decide the overbreadth issue because the court decided the as-applied challenge in the defendant's favor.

28 (2010) (quoting <u>Kolender v. Lawson</u>, 461 U.S. 352, 357 (1983)).  This is often called the "void-for-vagueness doctrine."  <u>Id</u>.  According to <u>Skilling</u>, the doctrine "addresses concerns about (1) fair notice and (2) arbitrary and discriminatory prosecutions."  <u>Id</u>. at 2933.  But "ordinarily '[someone] who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'"  <u>Williams</u>, 553 U.S. at 304 (quoting <u>Hoffman Estates v. Flipside, Hoffman Estates, Inc.</u>, 455 U.S. 489, 495 (1982)).  That restriction should apply here, given these defendants' alleged conduct.  On the other hand, that restriction is "relaxed . . . in the First Amendment context," allowing a party "to argue that a statute is overbroad because it is unclear whether it regulates a substantial amount of protected speech."  <u>Id</u>.  Even so, "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity."  <u>Id</u>. (quoting <u>Ward v. Rock Against Racism</u>, 491 U.S. 781, 794 (1989)).

On the issue of fair notice, a specific mens rea requirement in a statute "further blunts any notice concern," according to the Supreme Court.  <u>Skilling</u>, 130 S. Ct. at 2933.  <u>See also</u> <u>Lampley</u>, 573 F.2d at 787 (specific intent requirement in telephone harassment statute helps sustain it against vagueness attack).  To convict, this interstate stalking statute requires the government to prove beyond a reasonable doubt that a defendant had "the intent to kill, injure, harass, or place under surveillance with intent to kill, injure, harass, or intimidate, or cause substantial emotional distress to a person in another State . . . ."  18 U.S.C. § 2261A(2)(A).  Thus, the concern that

a defendant, as an ordinary person, cannot know what is prohibited is remote. Necessarily a defendant knows his own intent.[21]

Nevertheless, the defendants focus their challenges on certain words in the statute, claiming that the terms "harass," "injure," and "substantial emotional distress" are too vague. Sayer Mot. to Dismiss Count One of the Indictment at 4; Thomas Mot. To Dismiss at 12-13. The argument is not persuasive. None of those words is arcane. The Sixth Circuit upheld against a vagueness attack an earlier version of this federal statute that prohibited harassment that causes a reasonable fear of death or serious bodily injury. Bowker, 372 F.3d at 381. In Bowker, the court rejected the argument that "harass" and "intimidate" were unconstitutionally vague, saying that "the meaning of these words 'can be ascertained fairly by reference to judicial decisions, common law, dictionaries, and the words themselves because they possess a common and generally accepted meaning.'" Id. (quoting Staley v. Jones, 239 F.3d 769, 791-92 (6th Cir. 2001)); accord Eckhardt, 466 F.3d at 944; United States v. Shepard, 2012 WL 113027 *8-*9 (D. Ariz. 2012).[22] Like "harass" and "intimidate," the word "injure" has been used in criminal and

---

[21] For this reason I find unpersuasive the defendants' argument that the statute is defective (in the overbreadth context) for failing to specify whether "harass" and "substantial emotional distress" are used in a subjective or objective sense. Thomas Mot. to Dismiss at 9. Under the statute, the issue is what the defendant intended. That answers the question.

[22] The Model Penal Code defined the term "harass" in 1963 in a model telephone harassment statute. Model Penal Code § 250.4. There are many state criminal statutes that use the term "harass." Some define it; others do not. See e.g., Ala. Code §§ 13A-6-90 to 13A-6-94; Alaska Stat. § 11.61.120; Del. Code Ann. tit. 11, § 1311; Fla. Stat. Ann. § 784.048; Idaho Code § 18-7905; Iowa Code Ann. § 708.7; La. Rev. Stat. Ann. § 14:40.2; Mass. Ann. Laws ch. 265, § 43A; Mich. Comp. Laws Ann. §§ 750.411h-750.411i; Neb. Rev. Stat. §§ 28-311.02 to 28-311.05; N.M. Stat. Ann. §§ 30-3A-1 to 30-3A-4; Okla. Stat. Ann. tit. 21, § 1173; R.I. Gen. Laws §§ 11-59-1 to 11-59-3; S.D. Codified Laws Ann. §§ 22-19A-1 to 22-19A-7; Tenn. Code Ann. § 39-17-315; Utah Code Ann. § 76-5-106.

noncriminal cases for years.[23]   The phrase "substantial emotional distress," added to the federal statute in 2006, appears to come from state stalking statutes.[24]   Over the past two decades, there has been abundant caselaw in a number of state courts, and the phrase has not proven difficult to interpret.[25]   I

---

[23] By way of a sample, "bodily injury" is used in the Maine criminal code, 17-A M.R.S.A. § 207 ("A person is guilty of assault if: . . . The person intentionally, knowingly or recklessly causes bodily injury or offensive physical contact to another person."), and in the Massachusetts Criminal Code ch. 265, § 13A(b) ("Whoever commits an assault or an assault and battery upon another and by such assault and battery causes serious bodily injury . . . shall be punished by imprisonment in the state prison for not more than 5 years . . . .); "violent injury" is used in California Penal Code § 240 ("An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another."); "physical injury" is used in Alabama Code § 13A-6-20 ("A person commits the crime of assault in the first degree if . . . With intent to cause serious physical injury to another person, he causes serious physical injury to any person by means of a deadly weapon or a dangerous instrument."), and in Delaware statutes,11 Del. Code § 611 ("A person is guilty of assault in the third degree when . . . The person intentionally or recklessly causes physical injury to another person.").

[24] California adopted the first such statute in 1990. It used "substantial emotional distress" as a way of limiting its definition of harassment.  Specifically:

> "harasses" means a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, torments, or terrorizes the person, and that serves no legitimate purpose.  *This course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the person.*

Cal. Penal Code § 646.9 (emphasis added).  The phrase did not appear in the Model Anti-Stalking Code for States developed by the National Institute of Justice in 1993.  But it did appear in a number of state statutes.  The National Center for the Victims of Crimes, *The Model Stalking Code Revisited* at 48 (2007) (roughly half the states use emotional distress or an equivalent).   In 2002, California eliminated the requirement, after the California Court of Appeals read the actual causation element to require "evidence as to the severity, nature or extent of a victim's emotional distress."  State v. Ewing, 76 Cal. App. 4th 199, 212 (1999).  It now is recommended by *The Model Stalking Code Revisited*, developed by the National Center for Victims of Crime in 2007.

[25] See, e.g., Ewing, 76 Cal. App. 4th 199 (concluding that the phrase contributes to a definition of harass that is not unconstitutionally vague); Lupton v. Wyoming, 897 P.2d 463, 468 (Wyo. 1995) (sufficiently definitive meaning for persons of common intelligence); State v. Martel, 902 P.2d 14, 18-19 (Mont. 1995) (substantial emotional distress is not unconstitutionally vague). The National Institute of Justice in its 1996 Report provided an Appendix that lists all the constitutional challenges as of that date to state stalking statutes.  Few were struck down, and none on the grounds asserted here.  The Kansas Supreme Court did find unconstitutional a definition of "following" that "seriously alarms, annoys or harasses the person" when the legislature *deleted* the requirement that it also would "cause a reasonable person to suffer substantial emotional distress."  State v. Bryan, 910 P.2d 212, 216-17 (Kan. 1996).

conclude that ordinary people can understand from the statutory language what is prohibited.[26]

On the second issue, nothing in this statute's language creates a risk of arbitrary and discriminatory prosecution (other than what always exists in any criminal statute).  This is not a case like <u>Chicago v. Morales</u> where the city ordinance prohibited any "'criminal street gang members' from 'loitering' with one another or with other persons in any public place."  527 U.S. 41, 45-46 (1999).  There, the ordinance reached a substantial amount of innocent conduct, left it to the absolute discretion of police officers to decide what activities constituted loitering, and thereby "entrust[ed] lawmaking to the moment-to-moment judgment of the policeman on his beat."  <u>Id</u>. at 60-61.  This statute is also not like <u>Kolender v. Lawson</u> where "the full discretion accorded to the police to determine whether the suspect has provided a 'credible and reliable' identification necessarily 'entrust[ed] law-making to the moment-to-moment judgment of the policeman on his beat.'"  461 U.S. 352, 359 (1983) (quoting <u>Smith v. Goguen</u>, 415 U.S. 566, 575 (1974)).  Instead, with its specific intent requirement, the actual causation requirement, and the use of terms with a long history in the law, this statute contains adequate standards to avoid the arbitrary and discriminatory enforcement risk.

---

[26] <u>See</u> <u>Staley v. Jones</u>, 239 F.3d 769, 792 (6th Cir. 2001) (it is a reasonable application of Supreme Court precedent to find no unconstitutional vagueness in Michigan statute that defines criminal stalking as a "'willful course of conduct' that is repeated or continuing harassment that causes a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed or molested," and that "must also cause a reasonable individual to suffer emotional distress, an objective standard," because "a person of reasonable intelligence would know whether his conduct was violating the statute").

As a result, I conclude that the interstate stalking statute is not void for vagueness.

**Sufficiency of the Indictment Against Sayer**

The defendant Sayer has a separate argument: that Count One of the Indictment against him is insufficient to state an offense.

Although there is little factual detail in Count One of the Indictment, factual detail is not required. "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" Hamling v. United States, 418 U.S. 87, 117 (1974) (quoting United States v. Carll, 105 U.S. 611, 612 (1882)).[27] Count One satisfies that standard; it states all the elements of an interstate stalking offense under 18 U.S.C. § 2261A(2)(A) (specific intent; victim in another state; use of interstate facilities including email and websites; course of conduct that caused substantial emotional distress and reasonable fear of death or serious bodily injury).[28]

The Supreme Court has said that an indictment must also "fairly inform[ ] a defendant of the charge against which he must defend, and, second, enable[ ] him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Id. at 117. Count One satisfies those requirements as well. It accuses the defendant Sayer of using internet websites and email to

---

[27] Accord United States v. Berk, 652 F.3d 132, 138 (1st Cir. 2011) ("Setting forth the words of the statute itself is 'generally sufficient' if 'those words set forth all the elements of the offense without any uncertainty or ambiguity.'").

[28] Fed. R. Crim. P. 7(c)(1) requires "a plain, concise, and definite written statement of the essential facts constituting the offense charged." That standard too is satisfied.

engage in a course of conduct from about July 2009 to November 2009 that caused substantial emotional distress to a female victim in Louisiana, and placed her in reasonable fear of death or serious bodily injury.[29]  That is sufficient to inform the defendant Sayer fairly of the charge against which he needs to defend, and to avoid future prosecutions for the same offense.[30] Further details will be filled in by discovery (already voluminous, as I know from a pending motion to suppress).

The defendant Sayer notes, and the government concedes, an error in the statutory citation in the Indictment.[31]  I do not understand the defendant to be moving to dismiss on that ground.  In any event, Fed. R. Crim. P. 7(c)(2) provides:  "Unless the defendant was misled and thereby prejudiced, neither an error in a citation nor a citation's omission is a ground to dismiss the indictment or information or to reverse a conviction."  Since there is no suggestion that the defendant Sayer has been misled or prejudiced here, the citation error does not make the Indictment insufficient.[32]

---

[29] The defendant knows who the alleged victim is; I see no reason why her name need be included in the Indictment.

[30] This case is not like United States v. Yefsky, 994 F.2d 885, 893-94 (1st Cir. 1993), cited by the defendant.  There the First Circuit found an indictment defective (although it was harmless error) where, in charging a conspiracy to perpetuate a fraud, it did not identify the underlying fraud.  Here, the Indictment charges a course of conduct using websites and email to cause substantial emotional distress to an identifiable victim.  Nothing is missing.

[31] The citation should be to § 2261A(2)(A), not § 2261A(2)(B).  Gov't's Opp'n to Sayer Mot. to Dismiss at 2 n.1.

[32] Alternatively, the Indictment could be amended to correct the error.  See, e.g., United States v. Clark, 416 F.2d 63, 64 (9th Cir. 1969); United States v. Dowdell, 464 F. Supp. 2d 64, 67-69 (D. Mass. 2006).  See also United States v. Rivera-Ruiz, 244 F.3d 263, 271 (1st Cir. 2001) (approving amendment to correct clerical error).

### *Sufficiency of the Indictment against Thomas*

Thomas says that Count Eight of the Indictment against him fails to state an offense and lacks the necessary factual detail. For the reasons I have given in rejecting Sayer's challenge, this challenge also fails for Thomas. Count Eight contains what it needs to contain. Moreover, Thomas has obtained further details as a result of his motion for a Bill of Particulars.

* * * * *

For all these reasons, the defendant Sayer's motion to dismiss Count One of the Indictment against him and the defendant Thomas's motion to dismiss Count Eight of the Superseding Indictment against him are both **DENIED**.

**SO ORDERED.**

**DATED THIS 15TH DAY OF MAY, 2012**

/s/D. Brock Hornby
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**